Jiang v. Lynch

BIA
Poczter, IJ
A205 303 602

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of January, two thousand seventeen.

PRESENT:
>           RALPH K. WINTER,
>           PETER W. HALL,
>           SUSAN L. CARNEY,
>                 *Circuit Judges.*

_____

XIU YING JIANG,
>           *Petitioner,*

>           v.                                    15-1364
>                                                 NAC

LORETTA E. LYNCH, UNITED STATES
ATTORNEY GENERAL,
>           *Respondent.*

_____

FOR PETITIONER:           Stuart Altman, New York, NY.

FOR RESPONDENT:           Benjamin C. Mizer, Principal
                          Assistant Attorney General; Justin
                          Markel, Senior Litigation Counsel;
                          Margaret A. O'Donnell, Trial
                          Attorney, Office of Immigration
                          Litigation, United States
                          Department of Justice, Washington,
                          DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Xiu Ying Jiang, a native and citizen of China, seeks review of a March 26, 2015 decision of the BIA affirming an August 23, 2013 decision of an Immigration Judge ("IJ") denying Jiang's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Xiu Ying Jiang,* No. A205 303 602 (B.I.A. Mar. 26, 2016), *aff'g* No. A205 303 602 (Immig. Ct. N.Y. City Aug. 23, 2013). We assume the parties' familiarity with the underlying facts and procedural history in this case.

We have reviewed both the IJ's and the BIA's opinions. *Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 395 (2d Cir. 2005). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

Under the REAL ID Act of 2005, the agency may, in light of "the totality of the circumstances," base an adverse credibility determination on an applicant's "demeanor, candor,

2

or responsiveness," the plausibility of her account, and inconsistencies in her statements, "without regard to whether" those inconsistencies go "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 166 (2d Cir. 2008). Under the "substantial evidence" standard of review, "we defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 166.

The IJ's adverse credibility determination against Jiang is sound. The IJ reasonably relied on internal inconsistencies within Jiang's testimony and between her testimony and her documentary evidence. For example, Jiang testified that after her friend was released from detention, she spent four days on a hunger strike and then was herself released on August 5. But she also testified that she stopped eating in mid-July, which would put her release date much earlier. Jiang denies that she specified when she began her hunger strike or that it began immediately after her friend's release. But that denial is belied by the record: she testified that she stopped eating in

3

mid-July, "at the time when my church member was released."

The IJ cited Jiang's failure to mention her time in hiding on her asylum application, despite her testimony that, after the police searched her house in October 2011, she hid at a friend's house for about five days and then fled China.  As a general matter, "asylum applicants are not required to list every incident of persecution on their I-589 statements." *Pavlova v. INS*, 441 F.3d 82, 90 (2d Cir. 2006).  But according to Jiang's testimony, her time in hiding immediately preceded her hastened departure from China, and in fact was the reason she left.  The IJ was entitled to rely on this omission in deeming Jiang's testimony not credible: as we have observed, "[a]n inconsistency and an omission are, for these purposes, functionally equivalent."  *Xiu Xia Lin*, 534 F.3d at 166 n.3; *see id.* at 167 (holding that petitioner's failure to disclose the length of his detention in his asylum application was a proper basis for the IJ's adverse credibility determination). Jiang presses her explanation for the omission: she wanted to protect the friend who housed her.  But Jiang testified to her friend's name at the merits hearing, and she could have omitted any identifying information in her application, making this

4

explanation implausible. *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) (explaining that the agency is not required to credit an explanation that is merely plausible or possible).

The IJ noted another discrepancy between Jiang's testimony and her documentary evidence: Jiang testified that she and her friend were arrested together in both April and June, but the friend's statement said nothing about their June detention. Jiang professed not to know the reason for this omission.

The IJ cited several other inconsistencies in Jiang's testimony. When asked how many fellow church members were arrested in April 2011, she responded "Twelve; eight plus me and Jing, Chun Ying." On cross-examination, Jiang said, "[M]e and Jing Chun Ying, eight" were arrested. Similar confusion arose when she was asked how many police officers raided the church in April 2011: Jiang first responded 10, but on cross-examination changed that response to 12. Jiang posits that these arithmetic discrepancies are rooted in the Government attorney's confusion over whether the figures included her and her friend, and claims that she always said that 8 parishioners were arrested by 12 officers. Again, the IJ was not compelled to accept this explanation, *Majidi*, 430

F.3d at 80; moreover, Jiang never testified that she was including herself and her friend in the figure, and her "attorney's unsworn statements in [her] brief are not evidence," *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009).

Finally, the IJ cited Jiang's confusing testimony about how she traveled from Malaysia to the United States. On cross-examination, Jiang testified that after hiding in Iran, she traveled to Greece. When asked how she made that trek, Jiang responded that she climbed a mountain on the border of Iran and Greece and afterwards "took the gliding boat over." "[I]n assessing the credibility of an asylum applicant's testimony, an IJ is entitled to consider whether the applicant's story is inherently implausible." *Wensheng Yan v. Mukasey*, 509 F.3d 63, 66 (2d Cir. 2007). Such a finding cannot be based on "bald speculation or caprice." *Zhou Yun Zhang v. INS*, 386 F.3d 66, 74 (2d Cir. 2004), *overruled on other grounds by Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296 (2d Cir. 2007). But one that is based on "speculation that inheres in inference is not 'bald' if the inference is made available to the factfinder by record facts, or even a single fact, viewed in the light of common sense and ordinary experience." *Siewe v. Gonzales*, 480

F.3d 160, 168-69 (2d Cir. 2007). Here, basic geography supports the IJ's inference: Iran and Greece do not share a border.

Jiang's applications for asylum, withholding of removal, and CAT relief were all based on the same factual predicate, and so the agency's sound credibility determination was dispositive as to all three. *See Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

Jiang argues that she independently established a well-founded fear of persecution and a likelihood of torture based on her practice of Christianity in the United States. But the IJ determined that Jiang was not credible without distinguishing between her current practice of Christianity and her past persecution. In other words, the IJ made a unitary, not bifurcated, credibility determination. *Paul*, 444 F.3d at 154 ("[A]n applicant may prevail on a theory of future persecution despite an IJ's adverse credibility ruling as to past persecution, so long as the factual predicate of the applicant's claim of future persecution is independent of the testimony that the IJ found not to be credible." (emphasis omitted). To the extent Jiang's brief can be read to raise a

7

due process claim, as the Government notes, any such claim is unexhausted. *Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 123 (2d Cir. 2007) ("Judicially-imposed doctrines of issue exhaustion . . . will usually mean that issues not raised to the BIA will not be examined by the reviewing court."); 8 U.S.C. § 1252(d)(1). We therefore decline to consider it. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

For the foregoing reasons, the petition for review is DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk