15-1471
Kumar v. Lynch

BIA
Balasquide, IJ
A087 916 784

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of January, two thousand seventeen.

PRESENT:
    RALPH K. WINTER,
    PETER W. HALL,
    SUSAN L. CARNEY,
        *Circuit Judges.*
_____

GOLDEN KUMAR,
        *Petitioner,*

    v.                                      15-1471
                                            NAC
LORETTA E. LYNCH, UNITED STATES
ATTORNEY GENERAL,
        *Respondent.*
_____

FOR PETITIONER:        Maleeha Haq, New York, NY.

FOR RESPONDENT:        Benjamin C. Mizer, Principal Deputy
                       Attorney General; Shelley R. Goad,
                       Assistant Director; Russell J.E.
                       Verby, Senior Litigation Counsel,
                       Office of Immigration Litigation,
                       United States Department of Justice,
                       Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Golden Kumar, a native and citizen of India, seeks review of an April 7, 2015, decision of the BIA affirming a June 27, 2013, decision of an Immigration Judge ("IJ") denying Kumar's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Golden Kumar,* No. A087 916 784 (B.I.A. Apr. 7, 2015), *aff'g* No. A087 916 784 (Immig. Ct. N.Y. City June 27, 2013). We assume the parties' familiarity with the underlying facts and procedural history in this case.

We have reviewed both the IJ's and the BIA's opinions. *Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 395 (2d Cir. 2005). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

Under the REAL ID Act of 2005, the agency may, in light of "the totality of the circumstances," base an adverse credibility determination on an applicant's "demeanor, candor, or responsiveness," the plausibility of his account, and

2

inconsistencies in his statements, "without regard to whether" those inconsistencies go "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165 (2d Cir. 2008). Under the "substantial evidence" standard of review, "we defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167.

The adverse credibility determination against Kumar is sound. Kumar claimed that in January 2009, he and his wife were kidnapped by members of the radical Dera Sacha Sauda sect, and that his wife, then five months pregnant, was beaten and raped, causing her to miscarry.

In finding Kumar's testimony not credible, the IJ relied on Kumar's failure to mention his wife's rape during a credible fear interview. We have warned that a credible fear interview warrants "close examination" because it may "be perceived as coercive" or fail to "elicit all of the details supporting an asylum claim." *Ming Zhang v. Holder*, 585 F.3d 715, 724-25 (2d Cir. 2009). Nevertheless, "[w]here the record of a credible fear interview displays the hallmarks of reliability, it

3

appropriately can be considered in assessing an alien's credibility." *Id*. at 725. Some of those hallmarks are that the interview was memorialized in a typewritten document, was conducted through an interpreter, and asked questions designed to elicit a possible asylum claim. *Id*. at 275 (citing *Ramsameachire v. Ashcroft*, 357 F.3d 169, 180 (2d Cir. 2004)). Those hallmarks were present here: the interviewer asked Kumar about his past harm and future fears, and the interview was conducted with an interpreter and memorialized in a typewritten document. As the IJ noted, Kumar told the immigration official that his pregnant wife was detained and beaten, causing a miscarriage, but unlike at the merits hearing, did not report that she was raped. While we have observed "that, in some cases, *insignificant details* about an applicant's claim might not be mentioned during a credible fear interview," *Ming Zhang*, 585 F.3d at 725 (emphasis added), the rape of Kumar's wife was not an "insignificant detail" of his claim.

Kumar argues that the agency failed to conduct the required assessment of the interview's reliability. But we have advised that the BIA "need not engage in 'robotic incantations' or make any talismanic references to 'close examination' or 'special scrutiny.'" *Id.; cf. Yun-Zui Guan v. Gonzales*, 432 F.3d 391,

4

396 (2d Cir. 2005) ("[W]e do not regard these factors as essential to be assessed in every case, but simply as helpful matters to be considered where appropriate.").

Kumar conducts his own assessment and attacks the credible fear interview as unreliable on four fronts. First, he argues that it appears to paraphrase (rather than record) his answers. But the record need not be a "verbatim account" of the interview--it need only set forth the questions asked and the answers given. *Ming Zhang*, 585 F.3d at 725. Second, he notes that the interviewer never asked about harm to his wife. That is true; however, Kumar volunteered that his wife was beaten to the point of a miscarriage. It strains credulity to suggest that the official was obligated to ask a follow-up question about what harm--beyond a miscarriage--Kumar's wife suffered. Third, Kumar posits that he may have omitted details due to fear of returning to India. Kumar did not testify to that effect at his hearing, and an "attorney's unsworn statements in a brief are not evidence," *Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009). In any event, even if Kumar had offered that explanation, the agency would not have been compelled to credit it. *See Ming Zhang*, 585 F.3d at 725 ("We again reject the notion that a petitioner's claim that she was nervous and distracted

5

during the credible fear interview automatically undermines or negates its reliability as a source of her statements."). Fourth, Kumar argues that interpretation issues erode the reliability of the credible fear interview. The interview record does note that the interviewer's voice became hard to hear at times, but Kumar did not raise any problems understanding during the interview. When confronted with his failure to mention the rape, Kumar first responded that the immigration official did not ask detailed questions, but then said he did mention the rape and posited that the interviewer failed to record that statement. The agency was not compelled to credit these conflicting explanations. *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) (explaining that the agency is not required to credit an explanation that is merely plausible or possible).

The agency reasonably relied on two other inconsistencies between Kumar's testimony and documentary evidence. The first was with respect to his wife's pregnancy during the attack: he testified that she was five months pregnant, but her letter said three months. At the merits hearing, Kumar offered three explanations for this discrepancy: he did not know the details of her pregnancy, they were under too much stress to learn those

6

details, and Indian wives are shy about pregnancy.  Contrary to Kumar's arguments here, the IJ acknowledged that Kumar offered various explanations, and elected, quite reasonably, to reject them.  *Majidi*, 430 F.3d at 80.

The second inconsistency concerned when Kumar and his wife received medical treatment after the kidnapping.  Kumar testified that his wife was released after two or three days and was taken to the hospital immediately, and that he was released about two weeks later, on January 15.  But documents from the couple's physician reflected that both Kumar and his wife were treated on January 15.  When confronted with this inconsistency, Kumar explained that the doctor did not remember when he treated them and that the doctor did not "want to be involved in any kind of legal headaches."  Contrary to Kumar's arguments, the IJ did consider these explanations, but was not compelled to accept them, *Majidi*, 430 F.3d at 80.  Nor was the agency obligated to deem the doctor's letter "unreliable as documentary evidence."  "We generally defer to the agency's determination of the weight afforded to an alien's documentary evidence."  *Y.C. v. Holder*, 741 F.3d 324, 334 (2d Cir. 2013).  Here, the agency was within its discretion to find that Kumar's

7

documentary evidence impeached, rather than bolstered, his testimony.

Given the inconsistencies that cast doubt on whether Kumar and his wife suffered a critical incident of alleged persecution, the totality of the circumstances supports the agency's adverse credibility determination. Kumar's applications for asylum, withholding of removal, and CAT relief were based on the same factual predicate, and so the adverse credibility determination was dispositive as to all three. *See Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk